UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GEORGE W. CARLISLE, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:05CV2417 CDP |
| | ) |
| ST. CHARLES SCHOOL DISTRICT, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

*Pro se* plaintiff George Carlisle, a sixty-year-old African-American male, alleges that defendant St. Charles School District failed to hire him for the position of building computer technician because of his race, age, and sex. He seeks relief under Title VII. The School District claims that it did not hire Carlisle because he was not the most qualified candidate for the position.

Both parties have moved for summary judgment on all of Carlisle's claims. The District also requests that the Court strike Carlisle's motion in opposition to summary judgment for failure to file in a timely manner. Carlisle has not offered any evidence that could lead to an inference that the District's reasons for not hiring him are pretextual or otherwise unworthy of credence. There is no evidence suggesting discrimination based on race, sex, or age. Because there are no genuine issues of material fact and the undisputed evidence shows no discriminatory motive, I will grant St. Charles School District's motion for

summary judgment on Carlisle's claims. I will deny Carlisle's motion for summary judgment and the District's motion to strike.

I.  **Background**

In January of 2005, St. Charles School District posted a job opening for the part-time position of Building Computer Technician at the Lewis and Clark Career Center, a technical and vocational school that is operated by the St. Charles School District. The job posting listed the qualifications for the position as: high school graduate, basic knowledge of computer hardware, basic knowledge of computer software, and ability to work with teachers and students on computer usage. The job responsibilities included, but were not limited to: assisting with the instruction of students, instructing staff, maintaining the computer labs, low level maintenance and repair of building software and hardware problems, and serving as a resource for students and faculty.

Kathy Frederking, director of the Lewis and Clark Career Center, was responsible for reviewing applications, interviewing candidates, and selecting an individual to recommend to the District's Board of Education for employment in the position. The District received applications, including resumes, from seven candidates and Frederking selected three for interviews: Katherine Peters, Joshua Dunnagan, and defendant George Carlisle. Frederking interviewed the three candidates with Dennis Ryan, the vocational evaluator for the District. Each

applicant was asked the same 10 questions and Frederking and Ryan completed the same summary interview forms for each.

Notes taken by the interviewers concerning Carlisle's responses to interview questions indicate that Carlisle laughed inappropriately before answering some questions. When asked about his experience working with digital cameras, fonts, and PowerPoint presentations, Carlisle responded that he could "figure it out." The interviewers found his experience with web design and his experience writing database programs to be limited. On the other hand, the interviewers' notes on Dunnagan indicate that he had experience with digital cameras and PowerPoint, and that he knew HTML/JAVA for web design.

Upon completion of the interview, each interviewer rated the candidates on a paper screening form. Carlisle received ten 'outstanding' marks, eight 'good' marks, one 'outstanding/good' mark, and one mark of 'fair' in the 'communicates effectively' category. He was not recommended for employment by either interviewer. One of the interviewers noted on the evaluation that Carlisle commonly redirected questions to fit his answers. Another note mentioned that Carlisle was both overqualified in some areas and lacking in others.

After the interviews and a review of the qualifications of the applicants, Joshua Dunnagan, a twenty-sex year old white male, was recommended for employment with the District in the computer technician position, and he was

eventually hired. The interviewers had rated Dunnagan with fourteen 'outstanding' marks, four 'good' marks, two 'outstanding/good' marks, and no 'fair' marks. Overall, one interviewer described him as an 'outstanding candidate' and the other interviewer as a 'very good candidate.' The notes on the evaluation form indicate that the interviewers felt that Dunnagan would work well with the staff, that his hardware and software skills looked good, that he currently uses databases, and that he knows HTML.

Carlisle filed a charge of discrimination with the EEOC and the Missouri Commission on Human Rights on April 4, 2005, alleging discrimination based on race and age. He did not check 'SEX' as a basis for his discrimination claim, nor did he mention any facts relating to sex in the particulars section of the charge. The EEOC issued a right to sue letter on September 28, 2005, and on December 30, 2005, Carlisle filed this suit.

## II.  **Motion to Strike**

The District requests that the Court strike Carlisle's opposition motion to summary judgment in its entirety because it was not timely filed. The Case Management Order (CMO) issued on March 17, 2006, established that opposition briefs to dispositive motions were due no later than February 22, 2007. Carlisle admits to having mailed his opposition brief on February 26, 2007, four days after the deadline. However, he argues that the CMO deadlines were chosen "in error"

and are "inappropriate" because they do not allow time for service delivery by mail. Carlisle relies on Federal Rule of Civil Procedure 6, which explains how time deadlines are computed.

When the Court issues an order establishing deadlines, those deadlines are the dates when actions must be taken, and no additional time for mailing is added. Carlisle mistakenly assumes that he was allowed to compute his own deadlines under the Federal Rules, but the Court has already established them and no computation under Federal Rule 6 is required. As for Carlisle's suggestion that the deadlines were chosen "in error" and are "inappropriate," the Court can give no credence to such suggestions because Carlisle failed to appear for the scheduling conference which established the deadlines and he has no right to complain now. The Court has used the same general schedule as the one used in this case in hundreds of other cases, including cases involving *pro se* plaintiffs, without problem or complaint from the parties. In any event, because there has been no prejudice to the District, I will overlook Carlisle's mistake in this instance and deny the motion to strike, but he is warned that failure to follow court-ordered deadlines will not normally be excused.

### III. <u>Summary Judgment</u>

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court views the facts and inferences

from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). At the summary judgment stage, I will not weigh the evidence and decide the truth of the matter, but rather I need only determine if there is a genuine issue for trial. Anderson, 477 U.S. at 249. Finally, in making this determination, I must be mindful of the Eighth Circuit's admonition that "summary judgment should seldom be granted in discrimination cases." Bassett v. City of Minneapolis, 211 F.3d 1097, 1099 (8th Cir. 2000). Under these standards, I review the facts of this case.

### 1. Race Discrimination Claim

Carlisle claims that the District's decision not to hire him as the building computer technician was based on his race as an African-American. His claim is not founded on any direct evidence of discrimination, but instead rests on the fact that the person hired, Joshua Dunnagan, is white. Under these circumstances,

Carlisle's Title VII failure to hire claim must be analyzed using the burden-shifting framework developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and later refined in Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981), and St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).

Under this framework, Carlisle must first establish a prima facie case of discrimination by adducing proof that: (1) he is a member of a protected class; (2) he was qualified for the position for which the employer was accepting applications; (3) he was denied the position; and (4) the employer hired someone from outside the protected class. Arraleh v. County of Ramsey, 461 F.3d 967, 975 (8th Cir. 2006) (citing Kobrin v. Univ. of Minn., 34 F.3d 698, 702 (8th Cir.1994)). The prima facie case creates a rebuttable presumption of discrimination. Burdine, 450 U.S. at 254.

Once Carlisle creates this rebuttable presumption, the District must advance a legitimate, non-discriminatory reason for the termination. St. Mary's Honor Center, 509 U.S. at 506-08. The District's burden is one of production, not proof. Burdine, 450 U.S. at 254-55; Krenik v. County of Le Sueur, 47 F.3d 953, 958 (8th Cir. 1995). The District need not persuade the court; rather, it must simply provide some evidence of a non-discriminatory reason or reasons for its action. St. Mary's Honor Center, 509 U.S. at 509.

If the defendant carries this burden, then the burden shifts back to the plaintiff to show that the employer's proffered reason is merely a pretext for discrimination. Burdine, 450 U.S. at 253. The plaintiff may either prove pretext directly, by showing that the District was more likely motivated by a discriminatory reason, or indirectly, by showing that the District's explanation is unworthy of credence. Rose-Maston v. NME Hospitals, Inc., 133 F.3d 1104, 1108 (8th Cir. 1998). The plaintiff at all times bears the ultimate burden of establishing the existence of facts which, if proven at trial, would permit a jury to conclude that intentional discrimination was the true reason for the defendant's action. Id. at 508.

Although I find nothing in the record that would create an inference of unlawful discrimination (other than the fact that Carlisle is black, which is a separate element of the prima facie case), I will nevertheless assume for purposes of this motion that Carlisle has established a prima facie case. If I assume that Carlisle has met his initial burden, the burden then shifts to the District to articulate a legitimate, non-discriminatory reason for its failure to hire Carlisle. The District states that Carlisle was not hired because he was not the most qualified candidate, based on the job description requirements and the evaluation criteria used by the two interviewers. Specifically, the District argues that Carlisle lacked effective communication skills, lacked the experience required for the

position, and was unavailable to work the necessary hours. On its face these are legitimate non-discriminatory reasons for choosing not to hire Carlisle.

Because the District has met its burden to produce a legitimate, non-discriminatory reason, the burden then shifts back to Carlisle to "'prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 143 (2000) (quoting Burdine, 450 U.S. at 253). Carlisle can withstand summary judgment if the evidence in its entirety: (1) creates a fact issue as to whether the District's proffered reasons are pretextual; and (2) creates a reasonable inference that race was a determinative factor in the adverse employment decision. Rothmeier v. Investment Advisors, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996). Viewing the facts and inferences from the facts in the light most favorable to Carlisle, I find no evidence that creates a reasonable inference that race was a determinative factor in the District's decision not to hire Carlisle, nor do I find any evidence that could support an inference of pretext.

As a general matter, Carlisle has offered nothing, other than self-serving allegations, to contest the validity or veracity of the District's stated reasons for not hiring him. Carlisle admits that when he filed his charge of discrimination and when he filed this lawsuit he had no evidence of discrimination, he did not know

who had been hired for the position, and he did not know anything about the qualifications of the person hired. Despite this lack of information, Carlisle stated in his complaint that the discrimination was based on the District's selection of a less qualified candidate. Carlisle concedes that his claim of discrimination is based solely on his personal belief that he was the best person for the position.

The only evidence that Carlisle submits in support of his motion for summary judgment is documentation of his academic training, business and computer work experience, computer industry certifications, military service records, and Missouri state certifications. However, the only document that the District requested and reviewed for each candidate was a resume. The only achievements relevant to this inquiry are those that are listed on Carlisle's resume, because that was the information before the District when it made the hiring decision.

Not only is Carlisle's offered evidence irrelevant to whether the District's decision was pretextual because it was not known to the District at the time of its decision, the evidence is irrelevant to whether Carlisle is qualified for the building computer technician position. Carlisle argues that he is more qualified than Dunnagan in the areas of formal university education, business and computer work experience, computer industry certifications, military service and Missouri state certifications. In support of this argument, he included copies of his college

transcripts, his Missouri state certification record, his honorable discharge and separation document from the military, and his Microsoft Certified Professional ID card. None of these qualifications were required for the job of building computer technician. Evidence submitted by Carlisle relating to his expertise in unrelated areas are irrelevant to his level of qualification for this particular position.

Carlisle contends that "computer expertise is the primary qualification area for the Building Computer Technician position." Carlisle states that he has broader computer-industry work experience and certifications, and is therefore more qualified. However, Carlisle can not determine for himself what the 'primary qualification area' for the position should be. This is a decision left to the District.

"Although an employer's selection of a less qualified candidate 'can support a finding that the employer's nondiscriminatory reason for the hiring was pretextual,' it is the employer's role to 'identify [] those strengths that constitute the best qualified applicant." Kincaid v. City of Omaha, 378 F.3d 799, 805 (8th Cir. 2004) (quoting Duffy v. Wolle, 123 F.3d 1026, 1037-38 (8th Cir. 1997)). Thus, the District is free to select its own criteria for evaluating and selecting candidates for employment. This Court cannot second guess the District's chosen selection criteria, and Carlisle cannot suggest what qualifications should be given the most weight. "The employment discrimination laws have not vested in the

federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers." Hutson v. McDonnel Douglas Corp., 63 F3d 771, 781 (8th Cir. 1995).

Based on the job posting requirements and the experience listed in the resumes of Dunnagan and Carlisle, both candidates appear to meet the basic qualifications for the position. However, the interviewers asked for specific examples of experience in certain areas and they looked for qualities and skills in the candidates that cannot be determined by looking at a resume or list of achievements.

According to the "Paper Screen" evaluations completed by the two interviewers following each interview, the candidates were rated on the following categories: (1) Proficient in the installation and operation of software packages; (2) Repair and Maintain Hardware including servers and networking; (3) Ability to develop Databases; (4) Ability to take Digital Pictures and produce PowerPoint Presentation; (5) Ability to repair and maintain computer equipment; (6) Ability to train staff and teachers; (7) Communicates effectively; (8) Ability to prioritize and organize; (9) Ability to maintain a Web Page; and (10) Ability to maintain and develop inventory. Based on the scores from both interviewers, Dunnagan received fourteen 'outstanding' marks, four 'good' marks, and two marks that

appear to be 'outstanding/good.' Carlisle only received ten 'outstanding' marks, eight 'good' marks, one 'outstanding/good' mark, and one 'fair' mark.

Carlisle's 'fair' rating was given in the 'communicates effectively' category by one of the interviewers. The other interviewer gave Carlisle a 'good' for the same category but noted that Carlisle laughed a lot before answering questions and that he redirected questions to fit answers. Dunnagan received an 'outstanding' and a 'good' in the communication category. The interviewer who gave him a 'good' noted that he would work well with the staff. The job description specifically requires the 'ability to effectively present information and respond to questions from administrators, staff and the general public.' Carlisle's inability to effectively communicate in his interview was a reasonable basis for finding him less qualified for the position, given the position's communication requirements.

The District also argues that Carlisle lacked or had limited experience in the areas of work with digital cameras, fonts, PowerPoint presentations, and web design. There is no mention of skills in these areas on Carlisle's resume. It was during the interview that Carlisle was asked questions about his experience. For PowerPoint, Carlisle rated his expertise as a 9 out of 10, with 10 being an expert. However when asked about his experience working with digital cameras, fonts, and PowerPoint presentations, the interviewers' notes on his response were: "can figure it out" and "limited experience." In Carlisle's opposition to summary

judgment, he disputes that these comments reflect his response in the interview. But he does not state that he has any experience with digital cameras, instead he says: "Digital cameras function in the same basic way that other cameras operate. Aim and Click. An ordinary person could effectively operate a digital camera with only a few minutes of instruction." On the other hand, the interviewers' notes on Dunnagan's response to the same question were "yes - uses digital cameras at home" and "10,000 Pictures." Regarding Carlisle's responses on his web design experience, the interviewers noted: "Not sure of his answer" and "Limited experience." Based on the comments of the interviewers, it is clear that they felt that Dunnagan was a stronger candidate in the areas of effective communication, digital camera use, fonts, PowerPoint presentations, and web design. The undisputed evidence shows that the District reasonably concluded that Dunnagan was the most qualified person for the building computer technician position.[1]

Carlisle argues that the interview process lacked objective evaluation criteria, the interviews were not conducted in a uniform, accurate or fair manner, and that the interviewers were unprepared and brought a hostile attitude into the interview. Carlisle offers no evidence in support of these arguments. The

---

[1] The District also argues that Carlisle was unqualified for the position because he was unavailable to work the necessary hours. Although it became clear at Carlisle's deposition that he wanted to continue his full-time Department of Revenue Auditor job and work the part-time building computer technician position, Carlisle states that this information was not discussed at the time of the interview. Because it is disputed whether the District knew of Carlisle's hours conflict when it made its hiring decision, I have not considered these facts.

interview question forms indicate that each candidate was asked the same ten questions. The paper screening forms show that each interviewer rated each candidate on the same objective criteria. Carlisle provides no examples and cites no facts to demonstrate a hostile or discriminatory atmosphere during his interview.

It is not enough for Carlisle to establish that he and Dunnagan were both qualified for the building computer technician position. Kincaid, 378 F.3d at 805. To support a finding of pretext in this context, Carlisle must show that the District hired a less qualified applicant. Id. Although Carlisle has sixteen years of computer experience and a college degree, the position only required "basic knowledge" and a high school diploma. Dunnagan and Carlisle were both qualified for the position based on their resumes. Yet Dunnagan demonstrated effective communication and could provide examples of his work with digital cameras, fonts and web design in his interview.

In summary, there is no evidence from which a person could infer that intentional discrimination was the true motive behind the District's decision to hire Dunnagan. Carlisle cannot withstand summary judgment by merely hoping, without presenting some evidence of pretext, that the jury might not believe the District's unchallenged legitimate, nondiscriminatory reasons. Barge v. Anheuser Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996). The District is free to make any

decision it chooses regarding its personnel, so long as it does not impermissibly discriminate. See, e.g., McLaughlin, 50 F.3d at 511-12. Under Title VII, cases must be decided on evidence of racial discrimination, not on the basis of fairness. Torlowei v. Target, 401 F.3d 933, 935 (8th Cir. 2005). The District's decision to chose Dunnagan over Carlisle, despite Carlisle's more extensive training and education, is not illegal as long as the decision was not based on an ulterior, racially discriminatory motive. There is no evidence of such a motive here. Accordingly, Carlisle's claim that he was not hired because of his race fails.

## 2. Age Discrimination Claim[2]

Carlisle brings his complaint solely under Title VII which prohibits discrimination in employment on the basis of an individual's race, color, religion, sex, or national origin. 42 U.S.C. §2000(e)-2(a). Age discrimination claims are not actionable under Title VII and therefore defendant's motion for summary judgment as to this claim is properly granted.

The Age Discrimination in Employment Act (ADEA) forbids employers from taking adverse employment actions against employees because of their age. 29 U.S.C. § 623(a)(1). Even if the Court grants the *pro se* plaintiff some leniency

---

[2] The District argues that Carlisle has abandoned his age and sex discrimination claims by not addressing them in his motion in opposition to defendant's motion for summary judgment. Because there is no direct evidence of any type of discrimination, Carlisle discusses the same evidence to suggest pretext for all three claims of discrimination. As a result, I will give him the benefit of the doubt and assume he did not intend to abandon any claims.

and assumes that he meant to bring this claim under the ADEA, Carlisle's claim fails on the merits. Since he has produced no direct evidence of age discrimination, Carlisle's ADEA claim would also be analyzed under the burden-shifting framework of McDonnell Douglas. Lewis v. St. Cloud State University, 467 F.3d 1133, 1136 (8th Cir. 2006). Carlisle offers the same evidence of pretext in support of his age discrimination claim as he does with respect to his racial discrimination claim. As discussed above, this evidence is insufficient to rebut the legitimate, nondiscriminatory reasons offered by the District. The District's motion for summary judgment will be granted for Carlisle's claim of age discrimination.

### 3. Sex Discrimination Claim

Carlisle failed to allege sex discrimination in his charge of discrimination filed with the EEOC and Missouri Commission on Human Rights. He did not check the box marked 'SEX' when naming the basis for his discrimination charge and he did not mention anything about sex in his factual description of the particulars of the alleged discrimination. Carlisle even stated in his EEOC charge that he believed that he "was discriminated against on the basis of [his] age and race." Carlisle did not allege sex discrimination until he filed the complaint in this case.

Title VII requires that claimants exhaust administrative remedies by bringing all charges of discrimination before the EEOC before filing suit in federal court. Cottrill v. MFA, Inc., 443 F.3d 629, 634 (8th Cir. 2006). Charges brought in federal court that were not within the scope of the EEOC charge are properly dismissed for failure to exhaust administrative remedies. Id. at 635.

Even if the Court considered Carlisle's sex discrimination claim on the merits, Carlisle fails to make a prima facie case of sex discrimination under McDonnell Douglas because Carlisle admits that the person hired, Dunnagan, is also male. See Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1046 (8th Cir. 2005) (prima facie case requires showing the promotion of an employee similarly situated but not a member of the protected group). Because Carlisle failed to raise the allegations of sex discrimination in his EEOC charge and because any such allegations would fail on the merits, summary judgment will be granted to defendant as to Carlisle's sex discrimination claim.

## IV. Conclusion

Carlisle has failed to produce any evidence to create a fact issue as to whether the District's proffered reason for not hiring him was pretextual. Nothing in the record creates a reasonable inference that race, age, or sex was a determinative factor in the adverse employment decision. Additionally, Carlisle's age discrimination claim is inappropriately brought under Title VII and Carlisle

failed to exhaust administrative remedies as to his claim of sex discrimination. Despite this, both the age and sex claims would fail on the merits if properly before the Court. The District's motion for summary judgment on all claims will be granted and Carlisle's motion for summary judgment will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [#34] is GRANTED.

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment [#37] is DENIED.

**IT IS FINALLY ORDERED** that defendant's motion to strike [#41] is DENIED.

A separate judgment in accord with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of April, 2007.